715 So.2d 663 (1998)
Charles DOUGLAS, Plaintiff-Appellee,
v.
KITCHEN BROTHERS MANUFACTURING and Wausau Insurance Companies, Defendants-Appellants.
No. 30637-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*664 Crawford & Anzelmo by Donald J. Anzelmo, Susan N. Belsom, Monroe, for Defendants-Appellants.
Francis Broussard, Monroe, for Plaintiff-Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, Judge.
The defendants, Kitchens Brothers Manufacturing Co. and Wausau Insurance Companies, appeal a decree from the Office of Worker's Compensation, Parish of Quachita, in favor of the claimant, Charles Douglas, awarding penalties and attorney's fees. We affirm.

FACTS
It is undisputed that Mr. Charles Douglas (Mr. Douglas) suffered a compensable worker's compensation injury on April 21, 1995 while performing services arising out of and in the course and scope of his employment. Mr. Douglas was working with a planer saw when his right arm was caught in it. A co-worker turned the machine off but not before the saw cut into Mr. Douglas' right shoulder. There was extensive bleeding and the pulling action of the saw injured his neck as well. He had burns to the left side of his face because his arm had been pulled so far into the machine. Mr. Douglas' right arm was *665 reattached by Dr. Claude Minor, a surgeon at St. Francis Medical Center. Dr. Claude Minor ordered physical therapy about one (1) month after the accident. Mr. Douglas was accompanied to his doctors appointments by Wendy Cowert, a rehabilitation nurse, who was paid by the defendants.
Mr. Douglas underwent therapy in Mississippi because he moved back to his hometown. Therapy continued even after Mr. Douglas returned to work on August 21, 1995. The defendants paid worker's compensation weekly indemnity benefits for temporary total disability, plus all medical expenses.
Mr. Douglas was referred to a neurologist in Mississippi, Dr. Salil C. Tiwari, the defendant's choice of physician. After extensive physical therapy and testing, Dr. Tiwari issued a written statement on April 26, 1996 that Mr. Douglas had an upper impairment rating of 36%. Ms. Cowert was with Mr. Douglas when he saw Dr. Tiwari and the impairment rating was given.
Mr. Douglas understood that Ms. Cowert would inform the adjuster, Mr. Allen Daigerpont, about the disability rating. Later, Mr. Daigerpont told Mr. Douglas that no money would be paid to him until it was clear whether the disability rating was for the arm or the whole body. Mr. Douglas alleges that there was no response from the adjuster for months and that he was entitled to weekly benefits for permanent partial disability to his arm once the defendants were notified of Dr. Tiwari's findings.
On November 15, 1996, Mr. Douglas filed a petition with the Office of Worker's Compensation seeking permanent partial disability benefits, penalties and attorney's fees. On December 16, 1996, the defendants sent Mr. Douglas to Dr. Douglas Liles, orthopedic surgeon, for a disability determination. However, the physical therapist, David Johnson wrote to Mr. Douglas and his counsel to inform them that he had spoken to Mr. Daigerpont, the adjuster, who stated "they would not approve another impairment rating," because one was performed previously on Mr. Douglas by another physician and that they had accepted the 36% upper impairment.
Nevertheless, Mr. Douglas was subsequently seen by Dr. Liles and sent to David Johnson, physical therapist, for an assessment of his disability and an impairment rating.
On December 19, 1996, the defendants filed an answer asserting that there was no evidence provided to support a claim for permanent partial disability benefits and that Mr. Douglas was overpaid $139.58.
This matter was tried before the Honorable Brenza R. Irving, Hearing Officer for the Worker's Compensation, State of Louisiana, on July 16, 1997. The trial court determined that the April 26, 1996 report of Dr. Tiwari clearly refers to impairment of Mr. Douglas' arm. The report reads as follows:
Based upon the current problem, I have rated him 36% impaired because of the glenohumeral joint dysfunction. The deltoid muscle is a major muscle across this joint. Because of such severe impairment of this muscle, he has lost function across this joint. This is a major stabilizing muscle for the right upper limb.
The court further determined that the defendants failed to pay Mr. Douglas based on that permanent partial disability, that Dr. Tiwari was the defendant's choice of physician, that there is nothing in the report about "whole body" and that, if the defendants were confused, they did nothing to clear up their confusion. The court noted that, for some unknown reason, on December 17, 1996, the defendants decided to accept the 36% upper impairment, but it was not paid until March 1997, eleven months after Dr. Tiwari's report was issued. The defendants delayed payment until Dr. Liles gave an impairment rating on February 4, 1997. Dr. Liles' report was consistent with Dr. Tiwari's report.
The court found that there was not a basis for the defendants' failure to pay the permanent partial disability and that there was arbitrary and capricious conduct for their failing to pay for eleven months. The court awarded penalties in the amount of $2,000.00 and attorney fees in the amount of $3,000.00.

*666 NEUROLOGIST REPORT AND PERCENTAGE OF IMPAIRMENT
In assignments of error numbers one and two the defendants argue that the trial court erred in applying a standard which required the defendants to prove the percentage of the patient's impairment and that the trial court erred in attributing Dr. Tiwari's April 1996 report to a permanent impairment of the arm, when the opinion was based upon a whole body impairment. The defendants further argue that Dr. Tiwari's evaluation produced a whole body impairment rating for which permanent partial disability benefits are not due according to the Worker's Compensation Law, that there was confusion about the impairment rating that needed clarification and that it was not until February 1997 that an accurate percentage of impairment was provided.
Mr. Douglas counters that the defendants' choice of physician, Dr. Tiwari, gave Mr. Douglas a 36% upper impairment rating April 26, 1996, that if the defendants were confused about Dr. Tiwari's report they failed to do anything to clear up the confusion and that once a doctor opined that he had permanent disability greater than 25%, weekly benefits were owed for permanent partial disability. La. R.S. 23:1221(4).
Mr. Douglas further asserts that weekly benefits for the remaining weeks awarded for his permanent partial disability were owed within thirty (30) days of the receipt of the medical report showing the disability, La. R.S. 23:1201(D). The scheduled weekly benefits for permanent partial disability are in the nature of a personal injury award and are payable even though the employee is back to work. However, payment to Mr. Douglas was delayed another three months after the defendants told the physical therapist that an impairment rating was performed previously on Mr. Douglas by another physician and they had accepted the 36% upper impairment rating.
The hearing officer's factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Mitchell v. AT & T, 27,290 (La.App.2d Cir. 8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless the finding is clearly wrong. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Lebeaux v. Newman Ford, Inc., 28,609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291.
The hearing officer made factual and credibility determinations that Dr. Tiwari was the defendant's choice of physician, that there is nothing in the April 1996 report about "whole body," that the report makes a reference to page 48 of the "Impairment Due to Disorders of Upper Extremity," and that, if the defendants were confused about the impairment rating in the report, they did nothing to clear up their confusion.
While the law does not require an employer or insurer to prove percentage of impairment so as to entitle the claimant to permanent partial disability, the defendant has a duty to investigate and to make reasonable effort to ascertain the worker's exact condition before denying benefits. Holmes v. International Paper Co., 559 So.2d 970 (La. App. 2d Cir.1990); Brown v. Vernon Sawyer, Inc., 25,959 (La.App. 2 Cir. 10/26/94), 645 So.2d 260, 266.
We have thoroughly reviewed the record and conclude that a reasonable factual basis exists in the record for the hearing officer's findings. Furthermore, those findings are not manifestly erroneous or clearly wrong and will not be overturned by this court.
These assignments of error are without merit.

*667 AWARD OF PENALTIES AND ATTORNEY'S FEES
In assignments of error three and four, the defendants contend that the trial court erred in failing to consider the medical evidence set forth in the records of the treating general surgeon, Dr. Claude Minor, and the treating orthopaedic surgeon, Dr. Liles, and that the trial court erred in awarding penalties and attorney fees because the defendants controverted the claim with medical information countering that provided by Mr. Douglas. The defendants argue that it was not until February 1997 that an accurate percentage of impairment was provided to Mr. Douglas' treating physician, Dr. Liles, and that a check was authorized and provided to plaintiff's counsel on March 5, 1997.
Mr. Douglas counters by citing Perot v. Natchitoches Parish Hosp., 643 So.2d 378 (La.App. 3 Cir.1994) to support his position that an employer or insurer who fails to investigate an employee's compensation claim subjects itself to statutory penalties and attorney's fees and the failure to do anything on the part of the insurer is by its very nature arbitrary and capricious and without probable cause.
In Graham v. Georgia-Pacific Corp., 26-165 (La.App.2d Cir. 9/23/94), 643 So.2d 352, this court found that penalties may be assessed for nonpayment of compensation unless nonpayment results from conditions over which the employer or insurer has no control or if the employer or his insurer has reasonably controverted the employee's right to such compensation or medical benefits. La. R.S. 23:1201 E; Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir. 1989). To reasonably controvert a claim, the employer and insurer must have sufficient factual and medical information to reasonably counter that provided by the claimant. Vernon v. Wade Correctional Institute, 26,053 (La.App.2d Cir. 8/19/94), 642 So.2d 684. Attorney fees may be awarded if the insurer acted arbitrarily, capriciously or without probable cause in failing to pay benefits. La. R.S. 23:1201.2. These provisions are penal in nature and must be strictly construed, allowing recovery only in cases where the facts negate probable cause for nonpayment. Cleveland v. Delhi Guest Home, 29,506 (La. App.2d Cir. 5/7/97), 694 So.2d 607. The hearing officer has great discretion in deciding whether to allow or disallow penalties and attorney fees, and the decision will not be disturbed absent manifest error. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Davis v. Jones Baldwin Music Co., 27,545 (La.App. 2 Cir. 11/1/95), 662 So.2d 803, 807.
We therefore consider only whether the defendants have reasonably controverted Mr. Douglas' claim. The defendants contend that there was confusion about the April 1996 report from Dr. Tiwari, their choice of physician. However, the record does not reveal any effort by the defendants to clear up the confusion. Dr. Tiwari was the defendants' choice of physician. The defendants were in possession of Dr. Tiwari's report assigning an impairment rating and still delayed in paying Mr. Douglas worker's compensation benefits. The defendants do not contend that the nonpayment resulted from conditions beyond their control. The defendants have a duty to investigate and to make reasonable effort to ascertain the worker's exact condition before denying benefits. Holmes v. International Paper Co., supra; Brown v. Vernon Sawyer, Inc., supra.
In light of this evidence, the hearing officer was not clearly wrong to find that the defendants failed to reasonably controvert Mr. Douglas' claim, and that their failure to pay benefits was arbitrary, capricious and without probable cause. The award of penalties and attorney fees will be upheld.
These assignments of error are without merit.

CONCLUSION
For the reasons expressed, the judgment of the trial court is affirmed. All costs are assessed to the appellants, Kitchens Brothers Manufacturing Co. and Wausau Insurance Companies.
AFFIRMED.