737 So.2d 204 (1999)
Patricia CORLEY, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 31917-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1999.
Rehearing Denied June 3, 1999.
*205 Mayer, Smith & Roberts, L.L.P. by Frank K. Carroll, Shreveport, Counsel for Appellant.
Lee & Broussard by Francis C. Broussard, Monroe, Counsel for Appellee.
Before NORRIS, CARAWAY, KOSTELKA, JJ.
KOSTELKA, J.
Defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), appeals a judgment ordering it to pay workers' compensation benefits. We affirm.

Facts and Procedural History
Patricia Corley began working in the One-Hour Photo Center at Wal-Mart on November 13, 1996. In her role as lab technician, she handled photo processing chemical solutions and worked as a customer service agent. Shortly after beginning her employment, Corley started experiencing headaches, nausea, dizziness, and a burning in her throat. These symptoms were mild and improved each day after she left the lab and went home. On December 3, 1996, however, Corley's condition drastically declined after she assisted in cleaning up a chemical spill. She immediately began to experience serious dizziness and intense headaches. By the time she arrived at her home, she was vomiting. Corley suffered similar, but more profound, reactions after cleaning a spill one week later. Finally, after consulting her family physician for several symptoms, Corley decided that she could no longer tolerate working around the photo processing chemicals. She resigned her position with Wal-Mart on December 16, 1996.
When Wal-Mart refused to pay Corley any weekly benefits, she instituted this claim against her former employer in February 1997. After trial on the merits, the workers' compensation judge ("WCJ") concluded that Corley had suffered a compensable on-the-job accident and was entitled to temporary total disability benefits as well as medical expenses related to the injury. Wal-Mart appealed.

Discussion
Wal-Mart initially contends that there was no compensable work-related accident under La. R.S. 23:1021(1); instead, the employer argues, Corley's claim should be evaluated under the heightened burden of proof for occupational diseases arising after less than twelve months' employment per La. R.S. 23:1031.1(D). The employer suggests that inasmuch as Corley's symptoms began well before the alleged accidents her complaints are more akin to an occupational disease. Furthermore, Wal-Mart disputes Corley's involvement in the cleanup of the spills.
An appellate court's review in a workers' compensation case is, of course, governed by the manifest error standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Douglas v. Kitchen Bros. Mfg., 30,637 (La. App.2d Cir.06/24/98), 715 So.2d 663. Thus, the reviewing court does not decide whether the WCJ's factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through DOTD, 617 *206 So.2d 880 (La.1993); Douglas, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). Accordingly, if the trial court's findings are reasonable in light of the record, the court of appeal may not reverse, even if convinced it would have weighed the evidence differently if sitting as the trier of fact. Stobart, supra.
An accident, per La. R.S. 23:1021(1), is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." The jurisprudence has established that the term "accident" includes even a weakened or preexisting condition which collapses due to a precipitous event as opposed to such a condition which gradually deteriorates over time. Rice v. AT & T, 614 So.2d 358 (La.App. 2d Cir.1993); Herty v. City of New Orleans, 94-1960 (La.App. 4th Cir.04/13/95), 654 So.2d 785. An employee's disability is compensable if a preexisting condition or disease is activated, precipitated, aggravated, or accelerated by a work injury. Herty, supra; Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La.App. 1st Cir. 1992). Moreover, the fact that a condition may be referred to as an illness or disease does not preclude its classification as an accident. Harper v. Kast Metals Corp., 397 So.2d 529 (La.App. 2d Cir.1981), writ denied, 401 So.2d 988 (La.1981).
The WCJ concluded that the chemical leaks occurring in the Wal-Mart photo lab on December 3 and December 10 constituted accidents. We cannot say this determination is clearly wrong. Corley testified that she was on her hands and knees with her face near the chemicals as she cleaned the floor. Although Kathy Lied, Corley's supervisor, stated that she normally cleaned any chemical leaks herself, Lied could not dispute that Corley had some involvement in the cleaning process. Moreover, Corley immediately exhibited objective signs of an injury after these close contacts. As previously set forth, her earlier symptoms became significantly worse and were accompanied by vomiting. Corley's sister also testified regarding the intensity of Corley's condition. Although Corley's on-going mild discomforts may have eventually reached the same point without an identifiable, on-the-job injury, this in no way alters the fact that Corley has identified the moment her preexisting condition became an injury through a precipitous event at work. Cf. Dyson, supra; also see Comoletti v. Ideal Cement Co., 147 So.2d 711 (La.App. 1st Cir.1962).
Although not specifically assigned as error, Wal-Mart also argues that the WCJ erred in finding that Corley suffered any disability as a result of her employment. Corley's treating physician, Dr. Thomas Callender (a specialist in occupational and industrial medicine as well as medical toxicology), clearly found that the December accidents caused injury to his patient. After extensively examining Corley and reviewing the Material Safety Data Sheets,[1] Dr. Callender concluded that the mixture of chemicals with which Corley worked produced her acute and chronic illnesses: chronic and severe headaches secondary to trigeminal neuralgia and chronic nasal sinusitis; chronic olfactory dysfunction; microsmia secondary to chemical exposure; acquired hyper-reactivity of the airways; severe vestibular dysfunction; and, encephalopathy a diffuse dysfunction of the central nervous system including attention *207 deficits, poor short-term memory, depression, fatigue, anxiety, and a decrease of visual function.[2] Dr. Callender stated that Corley's prognosis for complete recovery is poor; however, she may experience a partial resolution of her complaints by December 1999. The doctor opined that the severity and frequency of Corley's pulmonary symptoms along with her neurological problems prevent Corley from engaging in any employment at this time. As to causation, Dr. Callender specifically testified that the exposure from mid-November to early December created an elevated baseline of physiological effect. And, then, the spills in December pushed Corley over a threshold and produced the current chronic condition.
Wal-Mart tendered the deposition testimony of two additional physicians: Dr. Douglas Swift, a specialist in occupational medicine and chemical exposure; and Dr. Robert Jones, a specialist in occupational pulmonary disease. Upon examination, Dr. Swift could find no objective signs of an injury or disease related to Corley's low-level exposure to chemicals at Wal-Mart. This doctor believed that the exposure while cleaning the chemical leaks would have caused, at most, a skin irritation. Likewise, Dr. Jones concluded that Corley did not have a respiratory injury, asthma, or reactive airway disease. Dr. Jones opined that in order for Corley to have sustained long-term, permanent structural damage, the December accidents would have immediately caused symptoms so severe that Corley would have been escorted, by ambulance, from Wal-Mart to a hospital's intensive care unit at the time of exposure.
The WCJ gave the opinions of these physicians less weight than that of the treating physician, Dr. Callender, inasmuch as they conducted limited examinations and were not provided with complete information concerning the chemicals at issue. The observations and opinions of the treating physician, although not irrebuttable, are to be accorded greater weight than those of a physician who has not served in that capacity. Williams v. Jones Truck Lines, 27,465 (La.App.2d Cir.11/01/95), 662 So.2d 867, writ not considered, 95-3082 (La.02/16/96), 667 So.2d 1044; Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/01/95), 662 So.2d 803. Despite the strong opinions offered by Drs. Jones and Swift, we cannot say that the WCJ clearly erred in concluding that Corley is disabled and cannot return to her employment.
Nor are we impressed by Wal-Mart's contention that recovery should be disallowed inasmuch as Corley made similar complaints to her family doctor on several occasions before beginning employment at the photo lab. Our review of this physician's records does reveal some reports of allergic rhinitis and muscular weakness; however, these complaints were of short duration and not as severe as Corley's current condition. Moreover, as previously noted, a preexisting condition aggravated by a work accident is a compensable injury.

Conclusion
Accordingly, the judgment below is affirmed at Wal-Mart's costs.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
*208 CARAWAY, J., dissenting.
I am unpersuaded that Dr. Callender's extensive list of diagnoses is supported by objective medical evidence linking the cause of Corley's subjective complaints to the photo processing chemicals at issue. For example, Dr. Callender, who is not a specialist in pulmonary disease, made diagnoses pertaining to the pulmonary system without the review of a chest x-ray, a high-resolution CT of the chest nor a CT of the sinuses. Though he ordered those tests, the tests were never conducted for his review. Regarding his neurological diagnoses, I find the description of this testing to be vague with the diagnoses again left resting on Corley's subjective report. The neurological testing by other doctors revealed no brain or nerve injury. Additionally, there was no evidence of toxic injury to other employees involved in the photo lab. Finally, Dr. Callender ambiguously related the cause of Corley's condition to both her month-long exposure to the laboratory chemicals and the two incidences in December 1996. In view of the specific provision in subsection C of the occupational disease statute, La. R.S. 23:1031.1(C), addressing laboratory poisoning as an occupational disease, I believe this situation requires that the burden of proof under that statute be met. This would require that Corley establish the chemical poisoning she now claims from her month-long employment in the lab by "an overwhelming preponderance of the evidence." La. R.S. 23:1031.1(D). Nevertheless, under any standard, the causation element of proof is wholly lacking in this case. I respectfully dissent.
NOTES
[1] The MSDS provide information on the chemicals Wal-Mart uses in photo processing, including the dangers of overexposure to those substances.
[2] These diagnoses appear in Dr. Callender's deposition. Corley also submitted a prior report from Dr. Callender in which he specifically delineated her diagnoses as follows: chronic, severe headaches; bilateral trigeminal neuralgia; chronic naso sinusitis; microsmia/parosmia; moderately severe reactive airway disease; encephalopathy; significant attentional deficits; very poor short term memory; depression, fatigue, anxiety; decreased visual contrast acuity/general acuity; abnormal central and peripheral vision; abnormal color acuity; peripheral polyneuropathy; chronic gastroenteritis; chronic dermatitis; severe vestibular dysfunction.