781 So.2d 877 (2001)
Neils J. BURROUGHS, Plaintiff-Appellee,
v.
LCR-M, et al., Defendant-Appellant.
No. 34,082-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2001.
*878 Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Robert A. Dunkelman, Shreveport, LA, Counsel for Appellant.
The Allison Law Firm, Inc. by William T. Allison, Shreveport, LA, Counsel for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, Judge
In this workers' compensation case, the defendant, LCR-M, and its insurer, Travelers Property Casualty, appeal the judgment of the Office of Workers' Compensation awarding benefits to the claimant, Neils J. Burroughs. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
On May 16, 1997, the claimant, Neils J. Burroughs, underwent arthroscopic surgery to repair a tear of the medial meniscus in his right knee. The surgery was performed by Dr. David Waddell, an orthopedic surgeon. The fact that this injury was unrelated to the claimant's employment is undisputed. During his deposition, Dr. Waddell testified that the claimant did not attribute this injury to any particular incident. According to Dr. Waddell, it is not uncommon for injuries of this nature to occur without any type of precipitating event or trauma.
On July 11, 1997, the claimant was involved in an accident during the course and scope of his employment with LCR-M Corporation, a plumbing supply company located in Shreveport, Louisiana. The claimant and a co-worker were loading a whirlpool tub from a dolly onto a truck when the tub slipped off of the dolly and hit the claimant's right knee. As a result, the claimant suffered a tear to the lateral meniscus of his right knee. On September 16, 1997, Dr. Waddell performed arthroscopic surgery to repair the tear. During surgery, Dr. Waddell also examined the medial meniscus. Dr. Waddell noted that a previous medial meniscectomy had occurred and there was "good healing and rim present." Dr. Waddell testified that there was no evidence of additional damage to the medial meniscus that could be attributed to the July 11, 1997 incident. The claimant was released to return to his regular job duties on October 27, 1997.
On March 2, 1998, the claimant returned to Dr. Waddell complaining of pain in his right knee. Dr. Waddell testified that the claimant informed him that he had "twisted" his knee during the previous week while at work. An MRI performed in July 1998, revealed that the claimant had a posterior horn tear of the medial meniscus. The claimant underwent surgery on August 8, 1998 to repair this injury.
On October 7, 1998, the claimant filed a "Disputed Claim for Compensation Form1008," asserting that the medial meniscus tear discovered in 1998 was the result of the work-related accident that occurred on July 11, 1997. The defendants denied the claim, asserting that the injury did not result from the July 11, 1997 accident. Defendants argued that *879 the tear was not present during the surgery performed on September 16, 1997. The matter was submitted to the workers' compensation judge ("WCJ") for trial on the merits. However, the parties entered a joint motion to waive formal trial and to submit the matter for decision on briefs, joint stipulation of facts and the medical evidence.
In his "Written Reasons for Judgment," the WCJ found for the claimant stating:
[B]ased upon Dr. Waddell's deposition testimony, that the surgery performed by Dr. Waddell on Burroughs right knee on August 8, 1998 was necessary as a result of work-related twisting incident which occurred in the week prior to March 2, 1998.
The WCJ awarded the claimant workers' compensation benefits for this injury. The WCJ did not make a finding regarding the causal relationship between the claimant's torn meniscus and the July 11, 1997 workrelated accident. The defendants now appeal the judgment of the WCJ.[1]

DISCUSSION
The defendants contend the WCJ erred in finding that the claimant's torn meniscus was caused by a work-related accident. They argue that the WCJ's findings were manifestly erroneous and, therefore, this court should review the record and determine the facts de novo.
In a workers' compensation case, an injured worker must prove by a preponderance of the evidence that his disability was caused by a work related accident. Macro Oil Co. v. Benjamin, 97-459 (La.App. 3rd Cir.10/8/97), 702 So.2d 915. The injured employee's testimony alone may be enough to meet the burden of proof as long as no other evidence contradicts the employee's version of the accident, and the testimony is corroborated by circumstances following the alleged incident. Macro Oil Co. v. Benjamin, supra.
An injured worker's disability is presumed to have resulted from an accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, proving either that there is sufficient medical evidence to show a causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Hurst v. St. Anthony Nursing Home, 94-664 (La. App. 5th Cir.1/18/95), 650 So.2d 774; Macro Oil Co. v. Benjamin, supra. Preexisting disease or infirmity of the employee does not disqualify a claim if the workinjury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Stutes v. Grey Wolf Drilling Co., 528 So.2d 1097 (La.App. 3rd Cir.1988).
In the instant case, the claimant argued that the tear of the medial meniscus discovered in July 1998 was the result of a work-related accident that occurred on July 11, 1997. Nevertheless, after examining the evidence, the WCJ concluded that based on Dr. Waddell's deposition testimony, the claimant's injury was a result of an unreported work-related incident where the claimant twisted his knee.
Factual findings in workers' compensation cases are subject to the *880 manifest error or clearly wrong standard of appellate review. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. If the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551.
Dr. Waddell testified that there is a "reasonable medical possibility" that the medial meniscus tear was causally related to the July 11, 1997 accident. According to Dr. Waddell, there could have been a very small tear within the rim of the medial meniscus which, at the time of the September 16, 1997 surgery, had not come to the surface and become clinically evident. If this were the case, the tear would not have been visible arthroscopically and would have given the appearance that the medial meniscus had healed. Dr. Waddell further testified that two additional plausible explanations for the second medial meniscus injury are: (1) everyday wear and tear on a previously injured and surgically repaired medial meniscus or (2) new trauma to the knee from a "twisting incident" that occurred in the week prior to March 2, 1998.
According to Dr. Waddell, a tear in the medial meniscus was not "clinically evident" on September 16, 1997 when he performed surgery on the claimant's lateral meniscus. Dr. Waddell opined that, in his "clinical judgment," the medial meniscus had healed by the time he performed the surgery. Dr. Waddell further opined that there was no evidence of additional damage to the medial meniscus during surgery that could be attributed to the July 11, 1997 work-related accident. Dr. Waddell testified that the work-related injury was limited to a tear to the lateral meniscus of the claimant's right knee and a tear to the lateral meniscus would not predispose the claimant to a tear of the medial meniscus. Dr. Mead, an orthopedic surgeon, and Dr. Broadwell, a rheumatologist, agreed with Dr. Waddell's opinion.
Based on the evidence presented in the instant case, the claimant failed to meet his burden of establishing a causal connection between the tear in the medial meniscus that was discovered in 1998 and the work-related injury that occurred on July 11, 1997. The evidence presented contradicts the claimant's contention that his injury was caused by the work-related accident of July, 1997. The record establishes that prior to the accident on July 11, 1997, the claimant experienced a torn medial meniscus which was not attributed to any particular type of "precipitating event or trauma." As previously stated, Dr. Waddell opined that at the time that the claimant underwent surgery to repair the workrelated injury sustained on July 11, 1997, the previously injured medial meniscus had healed and was not affected by the accident. The evidence of record does not support a finding that the latter injury to the claimant's medial meniscus was caused by the July 11, 1997 work-related accident. Thus, the claimant failed to prove that it was more probable than not that the injury to the medial meniscus of his right knee was caused by the July 11, 1997 accident. Therefore, the WCJ was clearly wrong in awarding the claimant workers' compensation benefits.
We note that the WCJ concluded that the compensable injury in this case resulted from a work-related incident where the claimant twisted his knee the week prior to March 2, 1998. However, *881 we conclude that the claimant could not legally recover benefits for this "twisting incident" because he did not file a claim with the Office of Workers' Compensation based on this alleged work-related accident. As stated above, the record does not reflect that the claimant ever reported this incident to his employer. Because this incident was not properly before the WCJ, we find that his award of workers' compensation benefits to the claimant based on the "twisting incident" was clearly wrong.

DECREE
For the foregoing reasons, the judgment of the Office of Workers' Compensation awarding the claimant, Neils J. Burroughs, workers' compensation benefits is reversed. All costs of this appeal are assessed to the claimant, Neils J. Burroughs.
REVERSED.
NOTES
[1] On May 23, 2000, the defendants filed an exception of prescription in this court asserting that any claim for benefits arising out of the "twisting incident" which occurred the week prior to March 2, 1998 had prescribed.