PEATROSS, J.
 

 liThe workers’ compensation judge (“WCJ”) granted the employer’s motion for involuntary dismissal at the close of claimant’s case, dismissing the case with prejudice. The WCJ found that the claimant had failed to meet her burden of proving that a work-related accident had occurred. The claimant now appeals. For the reasons stated herein, we affirm.
 

 FACTS
 

 The claimant, Teresa D. Lowe, was employed as an order checker in the shipping department of Skyjacker Suspensions (“Skyjacker”). Ms. Lowe’s duties included checking pallets of parts used in lift kits for four-wheel drive vehicles to ensure that the proper parts were on the pallets for shipment of orders placed with Skyjacker. According to Ms. Lowe, she regularly had to remove parts from the pallets and replace them with the correct parts. She testified that the parts varied in weight and size, some possibly weighing as much as 60 pounds. Ms. Lowe testified that, in late March or early April 2008, while she was carrying four boxes full of shocks, she
 
 *342
 
 “felt something pull in her back.” She did not report the incident, nor did she seek medical attention. Ms. Lowe continued with her regular duties and did not miss any work due to the alleged injury.
 

 Ms. Lowe further alleges, and testified, that a second “accident” occurred as she was attempting to remove boxes from a pallet and the boxes broke, causing her to fall backward. She testified that a coworker, Marty, whose last name is unknown and whom Ms. Lowe believed to be in a supervisory role, helped her up after the fall. Ms. Lowe claims that she sustained a lower back injury in the fall. As with the first alleged incident, |?Ms. Lowe did not report the accident and completed her shift on that day and continued her employment thereafter. In her testimony, Ms. Lowe admitted that her supervisor was actually not Marty, but was Carey Davis, although Ms. Lowe maintained that she believed that she could also “report to” Marty.
 

 On April 22, Ms. Lowe sought treatment for back pain from her regular physician, Dr. Warren Daniel. All charges were billed to and paid by Vantage Health Plan, Inc., Ms. Lowe’s health insurer. Dr. Daniel’s notes from the initial visit indicate that Ms. Lowe was experiencing back pain radiating down into her right leg, with an onset of two weeks. There is no notation regarding any injury or what may have precipitated the back pain. Dr. Daniel prescribed medication for Ms. Lowe, x-rayed her spine and prescribed stretching and soaking. Dr. Daniel’s records indicate that Ms. Lowe presented the following day, April 23, with continued complaints of back pain, still radiating down her leg. The notations for that day include the following: “ * lifts heavy objects @ work-works in shipping @ Skyjacker.” At this visit, Dr. Daniel ordered an MRI and referred Ms. Lowe to Dr. Myron Bailey. An appointment for Ms. Lowe was scheduled with Dr. Bailey.
 

 Ms. Lowe first saw Dr. Bailey on April 30. On the patient history questionnaire, Ms. Lowe described her discomfort as “lower back down to right leg.” In the space provided for the “date of injury or when symptoms began,” Ms. Lowe wrote “around 2-3 months ago.” She provided no further explanation in the space provided for “Explain your problem” on the ^questionnaire. There is no mention of any injury or potential cause of Ms. Lowe’s back pain in any of the records of Dr. Bailey. In fact, Ms. Lowe admitted in her testimony that she did not tell either Dr. Bailey or Dr. Daniel about any accident that occurred during her employment that may have caused injury to her back. Dr. Bailey treated Ms. Lowe and eventually performed surgery on her back.
 

 On July 16, 2008, Ms. Lowe filed a Disputed Claim for Compensation against Skyjacker seeking benefits, plus penalties and attorney fees for late/failure to pay benefits. On the claim form, Ms. Lowe described her injury as follows:
 

 While checking shocks, I discovered the wrong kits had been packed for an order. I removed the wrong kits and carried them to the shop to exchange for the correct merchandise. At the time, I felt a sharp pain in my lower back. Initially, I thought I had a pulled muscle, but that was not the case. Additionally, while arranging a pallet for shipping, I tripped and fell further injuring my back.
 

 Skyjacker disputed the claim, answering,
 
 inter alia,
 
 that no work-related accident had occurred.
 

 The matter proceeded to trial and Ms. Lowe was the sole witness called on her behalf. In her testimony, Ms. Lowe recounted the alleged accidents as follows:
 

 
 *343
 
 Q: Can you tell the Judge what you were doing when it occurred?
 

 A: I was taking product off of the pallet and was taking — was carrying the product to the department that it was supposed to be returned to, to get the correct items to put back on there.
 

 Q: And what happened?
 

 LA: It — when I was carrying the product, it felt like I pulled something in my back.
 

 [[Image here]]
 

 Q: Did you report this incident to anyone?
 

 A: No.
 

 Q: Did you go to the doctor as a result of this?
 

 A: No.
 

 [[Image here]]
 

 Q: Did you have a second accident or incident while working for Skyjacker?
 

 A: Yes, I did.
 

 Q: Did it occur after the pain-in-your-lower-back from carrying the four boxes of shocks?
 

 A: Yes, it is.
 

 Q: What were you doing when that occurred?
 

 A: I was pulling the wrong product off of a pallet that was pulled out there. The boxes broke and gave way, and when that happened, I lost my balance and fell backward.
 

 Q: Were you injured?
 

 A: Yes.
 

 Ms. Lowe then testified that Marty helped her up, but that she did not report the incident to anyone and continued working. She then testified about her treatment with Drs. Daniel and Bailey and agreed that she had not advised either doctor that she had been injured at work. The records of both doctors were admitted into evidence and, as previously noted, there is only one reference in the records of Dr. Daniel to the effect that she “lifts” heavy |5objects at work. In addition, we note that the only potential witness to either alleged accident was Marty, who was not called to testify at trial.
 

 As previously stated, Skyjacker moved for an involuntary dismissal based on the failure of Ms. Lowe to prove that a work-related accident had occurred. After further questioning and deliberation, the WCJ granted the motion.
 

 DISCUSSION
 

 A motion for involuntary dismissal at the close of claimant’s evidence is permissible after a bench trial when, based upon the facts and law, the claimant has failed to show a right to relief. La. C.C.P. art. 1672. A motion for involuntary dismissal requires the trial court to evaluate all of the evidence presented by the claimant and render a decision based upon the preponderance of the evidence.
 
 Gray v. City of Monroe,
 
 41,087 (La.App.2d Cir.5/17/06), 930 So.2d 1148,
 
 citing King of Hearts, Inc. v. Wal-Mart Stores, Inc.,
 
 27,-137 (La.App.2d Cir.8/23/95), 660 So.2d 524. An appellate court should not reverse an involuntary dismissal in the absence of manifest error; and, there is no manifest error if there is a reasonable factual basis for the finding of the trial court.
 
 Gray, supra, citing Silva v. Calk,
 
 30,085 (La. App.2d Cir.12/10/97), 708 So.2d 418.
 

 It is a well-settled legal principle that the factual findings in workers’ compensation cases are entitled to great weight. Reasonable evaluations of credibility and inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact’s factual determinations shall not be disturbed | (¡in the absence of a showing of manifest error. When the trier of fact’s
 
 *344
 
 findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. The appellate standard of review applicable to the findings of a WCJ is, therefore, the manifest error-clearly wrong test.
 
 Shelton v. Wall,
 
 614 So.2d 828 (La.App. 2d Cir.1993).
 

 In order to recover workers’ compensation benefits, an employee must prove that he suffered “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031(A). La. R.S. 23:1021 provides the following definitions:
 

 (1) “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
 

 [[Image here]]
 

 (7) “Injury” and “personal injuries” include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
 

 The claimant in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence.
 
 Daniel v. House of Raeford Farms of LA,
 
 44,753 (La.App.2d Cir.9/23/09), 23 So.3d 374,
 
 writ denied,
 
 09-2326 (La.1/8/10), 24 So.3d 871,
 
 citing Buxton v. Sunland Constr.,
 
 34,995 (La.App.2d Cir.8/22/01), 793 So.2d 526. Proof by a preponderance of the evidence is sufficient when the 17evidence, taken as a whole, shows that the fact sought to be proved is more probable than not.
 
 Id.
 

 In determining whether the worker has discharged the burden of proof, the trier of fact should accept as true a witness’ uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony.
 
 Daniel, supra.
 
 An accident at work may be proven by a claimant’s uncontradicted testimony corroborated by the medical evidence.
 
 Id.
 
 Thus, a worker’s testimony alone may be sufficient to discharge this burden of proof provided that two essential elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.
 
 Id.
 
 Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses or friends.
 
 Bruno v. Harbert Int’l Inc.,
 
 593 So.2d 357 (La.1992);
 
 Daniel, supra; Buxton, supra.
 

 If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof.
 
 Daniel, supra; Buxton, supra; Lubom v. L.J. Earnest, Inc.,
 
 579 So.2d 1174 (La.App. 2d Cir.1991). The trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong.
 
 Daniel, supra; Bruno, supra.
 

 | sin the case
 
 sub judice,
 
 the WCJ repeatedly questioned counsel for claimant regarding what evidence had been produced to show that Ms. Lowe had sustained a work-related injury. The only evidence in support of such accident is Ms. Lowe’s self-serving testimony, which the WCJ found insufficient to carry Ms. Lowe’s burden. Specifically, we note that
 
 *345
 
 Ms. Lowe’s testimony at trial regarding how the second accident occurred was somewhat inconsistent with the description of the accident she provided on the disputed claim form. Ms. Lowe testified that the second accident occurred when boxes broke as she was attempting to remove them from a pallet, causing her to fall backward. Previously, however, on the claim form, Ms. Lowe indicated that she “tripped and fell.” In addition, we note a discrepancy in the timing of the accidents
 
 vis a ‘vis
 
 Ms. Lowe’s first visits with Drs. Daniel and Bailey. On April 22, she reported the onset of symptoms to Dr. Daniel as “two weeks.” Eight days later, on April 30, she reported to Dr. Bailey that she had been experiencing symptoms for “around 2-8 months.” The WCJ chose to discredit Ms. Lowe’s testimony and, on this scant record, we find no manifest error in that determination.
 

 In addition, Ms. Lowe urges this court to find clear error in the WCJ’s finding that there was insufficient corroboration of her testimony that she sustained a work-related accident. She argues that (1) seeking medical attention for her back pain and (2) the notation in Dr. Daniel’s records that she “lifts heavy objects at work” constitute sufficient corroborating “circumstances following the alleged incident” to support her claim of an accident. We disagree. The fact that Ms. Lowe sought medical treatment 19for pain in her lower back is not corroborative of an on-the-job accident. Furthermore, the record reveals the WCJ’s thoughtful reasoning surrounding the corroborative weight of the notation in Dr. Daniel’s written records. We find no manifest error in the WCJ’s conclusion that the notation does not indicate that the cause of the injury claimed by Ms. Lowe was related to an incident that happened during the course of her employment with Skyjacker. To the contrary, we conclude that Ms. Lowe’s failure to report the alleged accident(s) to anyone at Skyjacker, the fact that she offered her private medical insurance to cover medical expenses prior to seeking payment through the employer, the lack of any statement to either physician that her injury was work-related, the lack of testimony from any other individual regarding this alleged injury,
 
 i.e.,
 
 coworkers (Marty) or family or friends, all tend to discredit or cast doubt on Ms. Lowe’s testimony that an accident or accidents occurred on the job.
 
 Daniel, supra.
 
 At the very least, the question of the occurrence of a work-related accident in this case is open to speculation and we cannot say the WCJ’s decision that Ms. Lowe failed to carry her burden of proof was manifestly erroneous.
 
 Daniel, supra; Buxton, supra; Lubom, supra.
 

 As a final note, we find the cases relied on by Ms. Lowe to be distinguishable from the instant matter. In particular, the decision fiwn this court in
 
 Royals v. Town of Richwood,
 
 38,738 (La.App.2d Cir.8/18/04), 880 So.2d 208, involved a resource officer at a school who was employed by the Town of Riehwood. Officer Royals injured her knee while getting out of her patrol car at the school. The officer immediately reported that she |lflwas injured to another security officer in the school, but continued her duties. Shortly thereafter, she re-injured the knee when she shifted her weight onto that knee in the restroom. The town’s compensation carrier paid her medical expenses, but denied indemnity benefits, claiming that Officer Royals had not sustained a work-related injury. The WCJ found the testimony of the officer that she had sustained a knee injury while getting out of her patrol car to be credible. Further, there was no evidence discrediting Officer Royals’ testimony. Also in
 
 Royals,
 
 there was documentary evidence in the form of letters written by two of the compensation carrier’s adjusters describ
 
 *346
 
 ing how the claimant injured her knee getting out of the patrol car. We find that
 
 Royals
 
 is not persuasive in this case because of the described additional evidence of the work-related accident.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the workers’ compensation judge granting the motion for involuntary dismissal of Skyjacker and dismissing with prejudice the claim of Teresa D. Lowe is affirmed at the cost of Ms. Lowe.
 

 AFFIRMED.